Good morning, Your Honors. Alfonso Morales on behalf of Mr. Henriquez. This case has an extensive procedural history with two different A numbers and three different appeals that have been consolidated before the court. The first matter I'd like to address is the basis of our appeal for the good cause that we believe existed for the continuance of his asylum case, which was denied. The case was previously on appeal and sent back to the court in July, or excuse me, May of 2017. But in July of 2017, the IJ set the case for an individual hearing in September of 2017. Days before the hearing, approximately 10 days, I realized that it was an individual setting instead of a master setting. And in my years of practice, I had never had that happen. And when I saw that, I immediately filed a motion to continue, you know, thinking that I would get the motion to continue. And when I showed up to the court hearing after the motion to continue had been denied, the judge indicated he did intend to go forward. On that day, present counsel admitted that he himself made the mistake, not his client, and pled with the court for a 30-day continuance in order to allow my client to have his day in court. I believe that should not have been held against my client and that his due process rights would have been violated either if his case was denied, his motion to continue was denied, or if we went forward that day. Because in effect, what would have happened if we had gone forward that day, it would have been as though he was unrepresented because he would not have had the opportunity to properly present his asylum case. Counsel, you knew before, you knew about five or six days before that the motion to continue was the motion to continue was denied. Don't you think it would have been reasonable to prepare your client to testify and put him on so you'd at least have some testimony? My client, Your Honor, lives two hours away from me. In addition to that, as a sole practitioner, in my experience in handling these asylum cases, it takes months to properly prepare an asylum case and be adequately ready to prepare a case and to go forward. And I had never requested a continuance in this matter, not once. We had never made an attempt to postpone the case. Therefore, you know, I had an expectation in speaking to the judge that the judge would be reasonable and allow us to move forward with the continuance, even if it was short, so that we could move forward with the case. Then when we were present, Your Honor, and the judge went forward and put us to the mat as to whether or not we would go forward or not, I felt that it could be highly prejudicial and we would be almost agreeing to move forward and quite possibly damage my client's case considerably. And therefore, we decided not to go forward, not in an effort to abandon our case, but to preserve our rights. And then in the process, Your Honor, of the continuance or the appeal, my client had criminal counsel in which there was a motion to vacate filed. And that motion to vacate was to address his only conviction that he had from 1985, in which he was convicted. Right. And that was, so that was, that conviction was vacated. When did you learn of that? I learned of that, Your Honor, I believe it was about December of that year or so. Well, what were the, the petition for, was the petition for review of the 2015 removal proceedings pending at that point? Yes, they were, Your Honor. So why didn't you ask to reopen at that point? Well, I, we were, that's what we were working on, Your Honor. And then we requested documents from counsel, criminal counsel, and along with my assistants, we did subsequently filed the first motion to reopen on May 20th of 2019. And that was the very first time we addressed the issue. Right, but that's for, so when, when was his conviction vacated? In 2018, right? His conviction was vacated October 15th of 2018, Your Honor. So why didn't you go to reopen right away? Well, as soon as I had the documents, Your Honor, we did try getting the documents during, there was interactions through phone, through correspondences as well, where we were trying to obtain the documents. And it is true that we did not file this within six months, but we filed it as soon as we could, which was May 20th of 2019. The board made its decision on April 24th of 2019. And we filed it within a month of that decision to ask them to reconsider based on the new facts. And then subsequent to their denial of that motion, Your Honor, they indicated that they felt that the, that it was not on point because there was a different A number associated with the case. That A number, Your Honor, was from the case of 1987 when he was previously deported. And subsequently we then filed another motion to reopen to try and cover our bases and have that before the court. And we made the argument that we would have hoped that the court would have taken judicial notice of that other A number being that this is the same individual that is being on, you know, being, who is in deportation proceedings. My understanding is that you filed that, the reopening of the 1987 deportation proceedings in July of 2022, but the BIA had said you had the wrong A number back in October 2021. Why did it take almost nine months to file with the right A number? I don't, it had to do with the COVID situation at the time and trying to figure out everything logistically in my office, but it was our responsibility, our issue, and we filed it in July of 2022 when we thought strategically that that was the right thing to do. Because we did think we had it before the court based on the original motion to reopen and that all it took was judicial notice of the fact that he had this prior A number. But then at that point in July, I felt that, you know what, I just need to file this to make sure that I cover all my bases and that's why I filed it in July. But you knew since the previous October that you had a problem, right? Yes, but I felt that, you know, I could hang my hat on the fact that I actually did file it in May and I felt that I already had it before the court and that that should have sufficed. But then I took, you know, I had second thoughts about what would be best and that's when I made the decision to file a second motion with the A number exclusively with the 650 which was the 1987 case. And I believe that, you know, when there is an issue that is at its core, a constitutional issue as far as the conviction, that there must be a remedy and I felt that I needed to put everything before the court in any way possible at that point in time and that's why we filed the second motion to reopen in July of 2022. Counselor, have you attempted to mediate this case given that your client does not appear to be an enforcement priority and he's been here since the 1980s. He has United States citizen children and grandchildren, a U.S. citizen spouse, and a U.S. citizen mother and his sole conviction was vacated. Have you tried to resolve this through other means? We have, your honor. He also has cancer, has had stomach cancer, been in the hospital. We have supplied that information to the government and they've had for some time and we did not find a resolution. Right. Did you try to use the Ninth Circuit mediators for this, the mediation unit here? We didn't speak with anyone specifically as far as getting any work done besides the fact of, you know, was there any communication between us, but there was no other work done besides that. I don't understand that answer. Did you consult with the Ninth Circuit mediation unit or not? We were in contact with the Ninth Circuit mediators, your honor, but I don't believe that we did much work besides, hey, you know, you guys want to mediate this or not mediate this. We wanted to mediate this. I believe the government did not. Okay. Are there any further questions? No. All right. Thank you, counsel. We'll hear from the government. Good morning, your honor, and may it please the court, Margo Carter for the United States Attorney General. The court should deny all three consolidated petitions for review in this case. The agency did not act arbitrarily, irrationally, or in a manner contrary to law when it denied the petitioner's requests in all three of these cases. If we turn to the first petition for review, the petitioner sought a continuance. A continuance can be given for good cause shown. Here, the petitioner and his counsel were served with a notice of hearing after remand by the Board of Immigration Appeals. That notice of hearing indicated that there would be an individual hearing upcoming. For whatever reason, the petitioner did not fully read that notice, or the counsel did not fully read that notice, and filed a motion to continue about two weeks before the scheduled individual hearing. At that point, the motion to continue supplied very little information as to why the continuance was necessary, apart from the fact that counsel simply did not read the notice of hearing that was presented. The immigration judge denied that remaining prior to the hearing. Not only that, the asylum application in this case had been filed back in March of 2016. To the extent that time would have been required to prepare oneself for testimony regarding a fear of gangs in El Salvador, which is what the basis for this claim was, the petitioner still would have had several days once the immigration judge denied the motion to continue. Instead of preparing for the hearing, the petitioner and his counsel appeared in court and indicated that they would renew the motion for a continuance. There was no further good cause shown for the continuance at that time. The petitioner did not allege that, you know, some religious holiday or something prevented preparation, or that he had other casework going on during that time that prevented his ability to prepare, nor did he indicate that he had an ill relative or any sort of circumstance that would indicate that there was a good cause for continuing the case. And so in this case, the immigration judge and later the Board of Immigration Appeals concluded that there was no good cause for a continuance. That it was entirely consistent with the board's precedent and with the petitioner's indication that the only basis for being unprepared for the hearing was that he did not know that the individual hearing was going to take place. Turning to the second petition for review, in the second petition for review, we are talking about a motion to reopen that the petitioner is of the vacator of a conviction. That motion to reopen was filed in 2019. The conviction was vacated in 2018, as the court noted, October 15, 2018, the conviction was vacated. And the petitioner did not seek a motion to reopen until May of 2019. Significantly, the appeal of the continuance decision was actually still ongoing and pending before the board when that vacator came down, but no attempt was made to notify the Board of Immigration Appeals of the vacator at that time. In May of 2019, the petitioner filed a motion to reopen based on the vacator of conviction and asked solely for the board to sua sponte, reopen the case, which the board declined to do. And the board's decision, again, was neither arbitrary, irrational, nor contrary to law, because in the vacating of that conviction, it had no impact on the subsequent removal proceedings. Petitioner reentered the United States illegally after he was deported pursuant to that conviction. The petitioner reentered the with no lawful basis for doing so, and was separately found removable on the basis of that reentry. And nothing about that vacator of the 1985 conviction was going to cure the petitioner's removal order, which was based on totally separate grounds, his entry without inspection in February of 1989. As to the third petition for review that petitioner filed, that, again, raises this 2018 vacator of conviction. But once again, this motion to reopen was untimely. I mean, he's seeking to reopen immigration proceedings from and it was untimely insofar as it was filed nine months after the prior motion to reopen denial. And there was no real explanation given for the delay, since, once again, this was raising this vacator of conviction. So the board, acting in accordance with its own precedent and with the precedent of the circuit, concluded that petitioner's motion to reopen was untimely, that he failed to demonstrate due diligence because he didn't really explain this lengthy delay, and that sua sponte reopening was unwarranted. In short, for all three petitions for review in this case, the board acted in concert with its precedent and with the precedent of the United States Court of Appeals for the Ninth Circuit. And the court should deny all three petitions for review because the board did not act arbitrarily, irrationally, or in a manner contrary to law. All right, thank you, counsel. Mr. Morales, you can give a minute. Your Honor, the only thing I'd like to point out is that the government never addressed the issue of the issue regarding the asylum case being denied for the motion to continue being denied. And I had no idea what their position was going to be on that, and I think they should have briefed the issuer, at least addressed it, and then said that they agreed or concurred. I think they waived that to some extent or failed to address it at all in their brief. I think that my client had a right to have his day in court and to be heard for his asylum case and not be affected by his counsel's deficiencies, which were admitted to on the record. And that is the reason why my client stayed with me. My client should have his day in court. He has been in the United States for a very, very long time, has extended family, and would like to have his opportunity and to be heard, especially considering the fact that he's been here for such a long time and has no current criminal history. Thank you. Thank you very much, Counsel. Enriquez v. Garland will be submitted.
judges: WARDLAW, FRIEDLAND, SUNG